*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1837
A23-1838**

In the Matter of:

Danielle Ann Oldenburg, petitioner,
Respondent,

vs.

Daniel Frederick Schanze,
Appellant (A23-1837),

In the Matter of:

Daniel Frederick Schanze, petitioner,
Appellant,

vs.

Danielle Ann Oldenburg,
Respondent (A23-1838).

**Filed June 24, 2024
Affirmed
Smith, Tracy M., Judge**

Dakota County District Court
File Nos. 19AV-FA-23-1211, 19HA-FA-23-235

James S. Carlson, Carlson Law Office, PA, Burnsville, Minnesota (for respondent)

Timothy R. Maher, Joseph D. Kantor, Guzior Armbrecht Maher, St. Paul, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Smith, Tracy M., Judge; and Slieter, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

In these consolidated appeals from the district court's grant of an order for protection (OFP) to respondent Danielle Ann Oldenburg against appellant Daniel Frederick Schanze and denial of Schanze's petition for an OFP against Oldenburg, Schanze argues that the district court (1) should have admitted and considered certain medical records regarding the parties' child; (2) should have, in its interview of the child, inquired about the allegations of child abuse in Schanze's petition; (3) erred by making a finding of fact based on evidence struck from the record as hearsay; and (4) failed to make adequate findings of fact to support its grant of the OFP. We affirm.

**FACTS**

Schanze and Oldenburg married in 2014 and divorced in 2016. On May 5, 2023, Oldenburg filed a petition for an OFP against Schanze for herself and the parties' minor child. Oldenburg attached an affidavit to her petition describing an alleged incident of domestic abuse that had occurred the day before. Oldenburg's affidavit included an emergency-room report for her from the night of the alleged incident and photos taken the next day showing bruising on her left shoulder. The district court issued an emergency ex parte OFP and, on the same day, Schanze filed a petition for an OFP against Oldenburg for himself and the child. Schanze attached an affidavit to his petition describing the same May 4 incident and alleging past incidents of abuse of the child by Oldenburg. The district court denied Schanze's request for an ex parte OFP.

The district court held a consolidated evidentiary hearing on both petitions over the course of two days in May and June of 2023. The district court heard testimony from Oldenburg and Schanze about the incident that occurred on May 4. On that day, the child had a Boy Scouts meeting at a local church. The meeting was during Schanze's parenting time, but Oldenburg went to the church to bring the child his uniform. Schanze retrieved the uniform from Oldenburg and brought the child to his truck to change into it.

Oldenburg testified that she approached the truck to check on the child's progress with changing. The parties both testified that they began to argue about whether Oldenburg punishes the child for missing extracurricular activities. Schanze testified that, because of the argument, he was preparing to leave with the child when Oldenburg tried to grab the child from the truck. Oldenburg testified that Schanze slammed her into the truck and elbowed her "many times" in the left shoulder. Schanze testified that he yelled at Oldenburg but denied pushing or elbowing her. After the incident, Schanze drove away with the child.

Twenty minutes later, Oldenburg left the church and went to the police station to report the incident. A criminal complaint against Schanze was filed in connection with the incident, but it was later dismissed. Oldenburg testified that, at the police station, she was unable to move her left arm and was in severe pain. Oldenburg then went to the emergency room.

**Medical Records**

During Oldenburg's testimony, the district court accepted into evidence her emergency-room report, and Schanze did not object. Oldenburg also testified on direct and cross-examination about the contents of the emergency-room report.

The district court also heard testimony from Schanze about alleged statements made by the child to Schanze in February 2023. According to Schanze, the child described that Oldenburg would forcefully grab him by the arms, leaving marks and bruises, throw him across the room, and grab him hard by the jaw. Schanze offered as evidence certain certified medical records regarding the child. The medical records contained statements made by the child that Schanze claimed fell within the hearsay exception for "[s]tatements made to a physician for purposes of treatment." Oldenburg's counsel objected, stating, "[The physician] is not a treating physician. That is a psychologist, and these are notes that were taken afterwards," adding, "[T]here's absolutely no way to cross-examine this psychologist or psychiatrist." The district court excluded the medical records in their entirety as inadmissible hearsay.

Schanze then moved to strike from the record as hearsay Oldenburg's previously admitted emergency-room report. The district court granted the motion, stating, "I'm not considering the medical records, and [Oldenburg] testified, so you can strike [the report]."

**Child's Testimony**

The district court heard testimony from the child through an in camera interview. The district court informed the parties, off the record, that it would be limiting its inquiry

4

of the child to the May 4 incident and summarized the conversation on the record as follows:

> The Court had some discussions with counsel because [appellant's counsel] brought [the child], the eight-and-a-half-year-old, who was present during the incident, and the Court was not comfortable having [the child] be on the stand with a direct or cross-examination. So the Court did tell both counsel, who then told their clients, that I was going to talk very briefly to [the child] and asked very limited questions about only the incident.

The district court noted that, in the interview, the child said that, while he was in the truck, he heard yelling and a bang but that "he looked up the other direction because . . . he didn't want to be part of it."

Following the hearing, the district court granted Oldenburg's petition for an OFP on behalf of herself, but not on behalf of the child, and denied Schanze's petition for an OFP both on his own behalf and on behalf of the child. Oldenburg's OFP was in effect until April 2, 2024.

Schanze filed separate appeals from the district court's grant of Oldenburg's petition and the denial of his petition. This court consolidated the appeals.

## DECISION

The Minnesota Domestic Abuse Act, Minnesota Statutes section 518B.01 (2022), authorizes a district court to grant a petition for an OFP when domestic abuse has occurred. Minn. Stat. § 518B.01, subd. 4. A petitioner seeking an OFP must demonstrate by a preponderance of the evidence that domestic abuse occurred. *See Oberg v. Bradley*, 868 N.W.2d 62, 64 (Minn. App. 2015).

5

Appellate courts review a district court's decision whether to grant an OFP for an abuse of discretion. *Thompson v. Schrimsher*, 906 N.W.2d 495, 500 (Minn. 2018). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted). The admission of evidence in an OFP hearing "rests within the broad discretion of the [district] court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Olson ex rel. A.C.O. v. Olson*, 892 N.W.2d 837, 841 (Minn. App. 2017) (quotation omitted). On appeal, the appellant carries the burden of showing that the district court erred. *Waters v. Fiebelkorn*, 13 N.W.2d 461, 464-65 (Minn. 1944) ("[O]n appeal error is never presumed. It must be made to appear affirmatively before there can be reversal[,] . . . [and] the burden of showing error rests upon the one who relies upon it.").[1]

---

[1] As a preliminary matter, Oldenburg argues that Schanze's challenges to the district court's evidentiary rulings are not properly before this court because Schanze did not file a motion for a new trial. "Orders under section 518B.01 are final orders in special proceedings and are appealable." *Steeves v. Campbell*, 508 N.W.2d 817, 818 (Minn. App. 1993). Generally, "matters such as trial procedure, evidentiary rulings and jury instructions are subject to appellate review only if there has been a motion for a new trial in which such matters have been assigned as error." *Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn. 1986). But special proceedings are governed by the general civil rules only when the legislature so indicates. *Steeves*, 508 N.W.2d at 818. *Steeves* notes that new trial motions are authorized only when the legislature has given this indication and the Domestic Abuse Act does not indicate that domestic-abuse matters are to proceed like other civil cases. *Id.* Furthermore, the evidentiary hearing generating the OFP is not a trial. *See id.* Therefore, a new trial motion is not authorized in domestic-abuse proceedings. *Id.* As a result, the lack of an unauthorized new trial motion does not mean that Schanze's challenges are not properly before this court.

**I.** **The district court did not abuse its discretion by excluding the child's medical records as inadmissible hearsay.**

Relevant evidence is generally admissible in a court proceeding. Minn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted" and is generally inadmissible, even if relevant, unless an exception applies. Minn. R. Evid. 801(c), 802. "Statements made for purposes of medical diagnosis or treatment" are admissible as an exception to the general bar on hearsay. Minn. R. Evid. 803(4); *see Peterson v. Richfield Plaza, Inc.*, 89 N.W.2d 712, 719, 721-22 (Minn. 1958) (applying this exception to permit testimony of a physician about certain statements made to him by a patient).

Schanze argues that the district court erred by not admitting the medical records of the child under rule 803(4) because the child's statements were made for purposes of medical diagnosis or treatment and because the medical records were certified. Oldenburg counters that Schanze failed to lay the proper foundation to admit the medical records under rule 803(4). We agree with Oldenburg.

While certification of the medical records might have addressed the authenticity of the medical records, it did not address the foundational requirement that the statements were "made for purposes of medical diagnosis or treatment." Minn. R. Evid. 803(4); *see also State v. Robinson*, 718 N.W.2d 400, 407 (Minn. 2006) (explaining that rule 803(4) requires an evidentiary foundation to establish that the hearsay statement "was reasonably

pertinent to the medical diagnosis or treatment"). Schanze did not offer any evidence to establish that foundation.

These circumstances are like those in *Olson*. In that case, the district court excluded a letter from the children's therapist, which presumably described the children's allegations of abuse. *Olson*, 892 N.W.2d at 841. On appeal, we concluded that the hearsay exception in rule 803(4) did not apply to the children's statements because, although "[t]he statements might have been made to the therapist for medical diagnosis or treatment generally[,] . . . the therapist did not testify to provide foundation for the statement." *Id.* at 841-42. Here, like in *Olson*, Schanze did not offer the testimony of the medical provider to establish that the statements were made for the purpose of medical diagnosis or treatment. Because the child's statements lacked the foundation to be admitted under rule 803(4), the district court did not abuse its discretion by excluding the child's medical records as inadmissible hearsay.[2]

## II. Schanze forfeited his challenge to the scope of the district court's interview of the child.

Minnesota Statutes section 595.02, subdivision 4 (2022), authorizes the district court, in a proceeding in which a child who is less than 12 years old is testifying about

---

[2] Schanze also asserts that the child's statements in the medical records are admissible under Minnesota Statutes section 595.02, subdivision 3 (2022), the hearsay exception for a child victim's out-of-court statements regarding abuse. But Schanze did not raise this theory in the district court. A party cannot raise a new issue on appeal, "[n]or may a party obtain review by raising the same general issue litigated below but under a different theory." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). And Schanze makes no argument to support the new theory. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (holding that issues not briefed on appeal are forfeited). We therefore decline to consider Schanze's assertion.

physical abuse, to "order that the testimony of the child be taken in a room other than the courtroom . . . to minimize the trauma to the child of testifying in the courtroom setting and, where necessary, to provide a setting more amenable to securing the child witness's uninhibited, truthful testimony." Minn. Stat. § 595.02, subd. 4(a)(1).

Schanze contends that the district court abused its discretion by limiting the scope of its interview with the child to the May 4 incident. He argues that, by failing to ask the child about the allegations in his petition regarding Oldenburg's alleged abuse of the child, the district court impermissibly excluded evidence of that abuse. Oldenburg argues that Schanze failed to preserve this issue for appellate review because he failed to object to the scope of the district court's questioning of the child.

We conclude that Schanze forfeited appellate review of the scope of the district court's inquiry of the child. When a party fails to object to admitted testimony at trial, this court may not consider an objection on appeal. *Westling Mfg. Co. v. W. Nat'l Mut. Ins. Co.*, 581 N.W.2d 39, 48 n.4 (Minn. App. 1998), *rev. denied* (Minn. Sept. 22, 1998). This rule logically applies as well to a party's failure to object to a district court's decision to limit its inquiry of a child in an in camera interview. Here, the record contains no indication that Schanze objected to the district court's approach to interviewing the child. It is clear from the record that Schanze had the opportunity to object to the district court's limited inquiry but did not do so. As a result, he forfeited appellate review of the issue.

9

**III.** **Any error by the district court in making a finding of fact based on the emergency-room report is harmless error.**

Schanze argues that "[t]he district court erred and abused its discretion by making findings that were unsupported by the record." Specifically, Schanze contends that the district court made a factual finding based on Oldenburg's emergency-room report, which, after initially being admitted without objection by Schanze, was struck from the record as hearsay.

But the mere existence of an error by the district court is not, by itself, sufficient to require relief on appeal; rather, the complaining party must also show that the error prejudiced the complaining party. *See* Minn. R. Civ. P. 61 (requiring courts to ignore harmless error); *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 98 (Minn. 1987) (stating that "[a]lthough error may exist, unless the error is prejudicial, no grounds exist for reversal").

Apart from the emergency-room report, the district court received evidence of domestic abuse through Oldenburg's sworn testimony and exhibits that were admitted into evidence. Oldenburg testified that Schanze slammed her into his truck and elbowed her repeatedly in her left shoulder. She testified about bruising on her left shoulder, and the district court received photos of the bruising. The information in the struck medical records was simply duplicative of other evidence of domestic abuse. As a result, Schanze has failed to demonstrate that any error by the district court in making a finding about the emergency-room report was prejudicial.

**IV.** **The district court made adequate findings to support its grant of the OFP to Oldenburg.**

Domestic abuse includes any of the following acts committed against a family or household member: (1) "physical harm, bodily injury, or assault"; (2) "infliction of fear of imminent physical harm, bodily injury, or assault"; or (3) various enumerated crimes. Minn. Stat. § 518B.01, subd. 2(a). "The Domestic Abuse Act, as a remedial statute, receives liberal construction but it 'may not be expanded in a way that does not advance its remedial purpose.'" *Sperle v. Orth*, 763 N.W.2d 670, 673 (Minn. App. 2009) (quoting *Swenson v. Swenson*, 490 N.W.2d 668, 670 (Minn. App. 1992)).

Schanze argues that the OFP was not supported by sufficient findings because the district court merely recited testimony without finding that domestic abuse occurred. A district court's findings must be affirmatively stated as findings of the court and must not be merely a recitation of the parties' testimony. *Dean v. Pelton*, 437 N.W.2d 762, 764 (Minn. App. 1989) (concluding that findings were inadequate when "the [district] court preface[d] its statements with phrases such as 'petitioner claims,' 'according to petitioner's application,' and 'respondent asserts'" and did not affirmatively state its findings as findings of the court).

Here, the district court, in many of its findings, described what the parties "testified" to. And the district court did not make explicit determinations about which party's testimony was credible. But, reading the district court's order as a whole, we can infer that the district court found Oldenburg's testimony credible and found that Schanze committed domestic abuse against Oldenburg. *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn.

11

App. 2009) (recognizing the district court's implicit finding that the petitioner was credible). These implicit findings support the district court's grant of an OFP.

To support his argument that the district court's findings are inadequate, Schanze relies primarily on *Andrasko v. Andrasko*, 443 N.W.2d 228 (Minn. App. 1989). In *Andrasko*, we held that the district court erred by failing to make any findings concerning domestic abuse. 443 N.W.2d at 231. We stated:

> In the present case, the [district] court made no findings. The court did not fill in the blank space for findings on the pre-printed order for protection. Additionally, the court did not make any oral findings on the record. Consequently, the [district] court erred by failing to make any findings concerning domestic abuse.

*Id.* at 230-31 (citation omitted). Here, in contrast, the district court made two pages of factual findings, and those findings, together with the district court's implicit credibility determinations, support the grant of the OFP to Oldenburg.

**Affirmed.**